IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**JASON MITCHELL,**

    **Plaintiff,**

**v.**                                                                 **Civil Action No. 1:08cv195**
                                                                        **(Judge Keeley)**

**UNITED STATES,**
**FEDERAL BUREAU OF PRISONS,**
**MONONGALIA GENERAL HOSPITAL,**
**ROGER KING,**
**GREENWALD,**
**ANTENELLI,**
**WATSON,**
**BRIMSON,**
**ODDO,**
**KAMICAR,**
**KERN,**
**HAGGARTY,**

    **Defendants.**

## REPORT AND RECOMMENDATION

On October, 27, 2008, the *pro se* plaintiff, a federal inmate, initiated this action by filing a civil rights complaint pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), a case in which the Supreme Court created a counterpart to 42 U.S.C. §1983 and authorized suits against federal employees in their individual capacities. On November 12, 2008 the plaintiff was granted leave to proceed *in forma pauperis*. On May 12, 2009, the undersigned issued an order directing the plaintiff to provide proof of exhaustion of remedies, and on May 29, 2009, the plaintiff filed a response. This matter is before the undersigned for an

1

initial review and report a and recommendation pursuant to LR PL P 83.01, et seq., and 28 U.S.C. §§ 1915(e) and 1915(A).

## I. The Complaint

In his complaint, the plaintiff alleges that the named defendants violated his 8th Amendment rights in that they were deliberately indifferent to his medical needs and subjected him to cruel and unusual punishment. More specifically, the plaintiff claims that on December 15, 2007, an object became lodged in his throat and that the Heimlich maneuver had to be performed on him. Plaintiff claims that he was sent to the hospital and then subsequently returned to the prison. Upon his return to the prison, the plaintiff alleges that he tried to find out what it was he had choked on, but that the defendants were indifferent to these attempts. He also alleges that he was placed in a "dry-cell" for approximately nine hours as a form of punishment for requesting medical attention and information as what had caused him to choke.

In addition, the plaintiff alleges that the defendants, excluding Monongalia General Hospital and Roger King, conspired to violate his civil and constitutional rights when they allowed him to be attacked by another inmate, and thereafter subjected him to cruel and unusual punishment without due process when they placed him in the "hole" and by not punishing the individual who attacked him. The plaintiff is asking for relief in the form of $2,000,000 in damages.

## II. Standard of Review

Because plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. Pursuant to 28

U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. Complaints which are frivolous, or malicious, must be dismissed. 28 U.S.C. 1915(e).

A complaint is frivolous if it is without arguable merit either in law or fact. Neitzke v. Williams, 490 U.S. 319, 325. However, the Court must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint filed *in forma pauperis* which fails to state a claim under Fed. R.Civ. P. 12(b)(6) is not automatically frivolous. See Neitzke at 328. Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless," Id. at 327.

### III. Analysis

#### A. Exhaustion of Remedies

A Bivens action, like an action under 42 U.S.C. §1983, is subject to exhaustion of administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). Porter v. Nussle, 534 U.S. 516, 524 (2002). Under the PLRA, a prisoner bringing an action "with respect to prison conditions" under 42 U.S.C. §1983 must first exhaust all available administrative remedies. 42 U.S.C. §1997e. Exhaustion, as provided in §1997e(a), is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). While the phrase "with respect to prison conditions" is not defined in 42 U.S.C. §1997e, the Supreme Court has determined that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter at 517. Moreover, exhaustion

3

is even required when the relief the prisoner seeks, such as monetary damages, is not available. Booth, 532 U.S. at 741.

The United States Supreme Court has held that proper exhaustion of administrative remedies is necessary, thus precluding inmates from filing untimely or otherwise procedurally defective administrative grievances or appeals and then pursuing a lawsuit alleging the same conduct raised in the grievance. See Woodford v. Ngo, 548 U.S. 81, 83 (2006). In Woodford, the United States Supreme Court clarified that the PLRA exhaustion requirement requires proper exhaustion. Id. at 84. The Court noted that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. The Court found that requiring proper exhaustion fits with the scheme of the PLRA, which serves three main goals: (1) eliminating unwarranted federal court interference with the administration of prisons; (2) "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Id. at 93-94. As the Court concluded, "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." Id. at 95.

"The BOP makes available to its inmates a three level administrative remedy process if informal resolution procedures fail to achieve sufficient results. *See* 28 C.F.R. § 542. 10, *et seq* . This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated. If the inmate's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located. If the Regional Office denies relief, the inmate can appeal to the Office of

General Counsel via Central Office Administrative Remedy Appeal." Owens v. Haynes, No. 3:07cv29, 2008 WL 4571821 * 3 (N.D.W.Va. 2008).

From the record, it would appear that the plaintiff attempted to exhaust his administrative remedies, but his claims were rejected as untimely. (Doc. 15). In reviewing the information provided by the plaintiff regarding exhaustion, it would appear that the plaintiff may have been prevented from filing in a timely fashion because of a lock down at USP Hazelton. However, even if the plaintiff had exhausted his administrative remedies, or the Court were inclined to find good cause for failure to exhaust, the plaintiff's complaint is still due to be dismissed for the following reasons.

**B. Defendants the United States of America and the Federal Bureau of Prisons ("BOP")**

A Bivens cause of action is only available against federal officers in their individual capacities, not the federal agency which employs the persons acting under federal law or the federal government itself. See FDIC v. Meyer, 510 U.S. 471, 484-86 (1994) (refusing to find a Bivens remedy against a federal agency); Kentucky v. Graham, 473 U.S. 159, 165 (1985); see also Randall v. United States, 95 F.3d 339, 345 (4th Cir. 1996) ("Any remedy under Bivens is against federal officials individually, not the federal government."). Therefore, the United States of America and the BOP must be dismissed from this action.

**C. Defendant Monongalia General Hospital**

In the complaint, plaintiff names Monongalia General Hospital as a defendant. However, as previously noted, Bivens authorized suits against federal employees in their individual capacities.

Monongalia General Hospital is not a federal agency, and it clearly is not a person for purposes of a Bivens action.[1]  Therefore, it is due to be dismissed as a defendant in this action.

**D. Defendant Roger King**

In the complaint, plaintiff names Roger King ("King"), a medical doctor at Monongalia General Hospital, as a defendant.  However, the plaintiff's complaint is pursuant to a Bivens claim, which again authorizes suits against federal employees in their individual capacities.  It is clear that King is not a federal employee, as he is employed by the Monongalia General Hospital. Therefore, King is not a proper party to this action and should be dismissed.

**E. Choking and Dry Cell**

In his complaint, the plaintiff names Defendant Watson, an employee of the BOP, as the person who performed the Heimlich maneuver on him when he was choking, and placed him in a "dry-cell" for nine (9) hours after attempts by the plaintiff to discover what caused him to choke. The plaintiff alleges claims of deliberate indifference and cruel and unusual punishment against this defendant.

To state a claim under the Eighth Amendment, with respect to medical care, the plaintiff must show that defendant acted with deliberate indifference to his serious medical needs.  Estelle

---

[1]Compare, for example, the following cases dealing with § 1983 actions: Brooks v. Pembroke City Jail, 722 F.Supp. 1294, 1301 (E.D.N.C. 1989) (Claims under § 1983 are directed at persons); see also Will v. Michigan Dept. Of State Police, 491 U.S. 58, 71 (1989) ("Neither a State nor its officials acting in their official capacities are 'persons' under § 1983"); Preval v. Reno, 203 F.3d 821 (4th Cir. 2000) (unpublished) )"[T]he Piedmont Regional Jail is not a 'person,' and is therefore not amenable to suit under § 42 U.S.C. 1983"); Roach v. Burch, 825 F.Supp. 116 (N.D.W.Va. 1993) (The West Virginia Regional Jail Authority is "in effect the State of West Virginia" and is not a person under § 1983).

v. Gamble, 429 U.S. 97, 104 (1976). A cognizable claim under the Eighth Amendment is not raised when the allegations reflect a mere disagreement between the inmate and a physician over the inmate's proper medical care, unless exceptional circumstances are alleged. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that, objectively, the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991). When dealing with claims of inadequate medical attention, the objective component is satisfied by a serious medical condition.

A medical condition is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir.1990), *cert. denied*, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir.1987) *cert. denied,* 486 U.S. 1006 (1988).[2]

A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth 834 F.2d at 347. Thus, while failure to provide recommended elective

---

[2] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997).

7

knee surgery does not violate the Eighth Amendment, Green v. Manning, 692 F.Supp. 283 (S.D. Ala.1987), failure to perform elective surgery on an inmate serving a life sentence would result in permanent denial of medical treatment and would render the inmate's condition irreparable, thus violating the Eighth Amendment. Derrickson v. Keve, 390 F.Supp. 905, 907 (D.Del.1975). Further, prison officials must provide reasonably prompt access to elective surgery. West v. Keve, 541 F. Supp. 534 (D. Del. 1982) (Court found that unreasonable delay occurred when surgery was recommended in October 1974 but did not occur until March 11, 1996.)

The subjective component of a "cruel and unusual punishment" claim is satisfied by showing deliberate indifference by prison officials. Wilson, 501 U.S. at 303. "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." Id. at 844.

The plaintiff's first allegation against Defendant Watson is that he was deliberately indifferent to the plaintiff's medical needs by not telling the plaintiff what is was that caused his choking. With respect to this claim, the plaintiff cannot satisfy the objective element of the claim, because his choking was not a serious medical condition. At best, if choking were to be considered a medical condition, it was an isolated instance that was treated effectively and posed no continuing risk to the plaintiff's health. Furthermore, the plaintiff cannot satisfy the second element of the

claim that the defendant was deliberately indifferent to his needs. First, the defendant performed the Heimlich maneuver on the plaintiff to dislodge whatever it was that caused the plaintiff's choking and then had him transferred to the hospital. Second, there is no risk of substantial harm by the defendant not telling the plaintiff what caused him to choke, and moreover, the plaintiff makes no claim that he has suffered any detriment by not knowing what caused him to choke. Therefore, the plaintiff's claim of deliberate indifference against Defendant Watson should be dismissed.

The plaintiff also claims that Defendant Watson subjected him to cruel and unusual punishment by placing him in a 'dry-cell' for nine (9) hours. The Eighth Amendment protects prisoners from punishments which "'involve the unnecessary and wanton infliction of pain' or are grossly disproportionate to the severity of the crime." Rhodes v. Chapman, 452 U.S. 337, 346 (1981) (citations omitted). These principles apply to the conditions of a prisoner's confinement and require that the conditions within a prison comport with "contemporary standard[s] of decency" to provide inmates with "the minimal civilized measure of life's necessities." Id. at 347; see also Farmer v. Brennan, 511 U.S. 825, 832 (1994) (explaining that both the treatment of prisoners and the conditions of their confinement are subject to scrutiny under the Eighth Amendment). Therefore, while "'the Constitution does not mandate comfortable prisons,'" it also "does not permit [an] inhumane one." Id. (quoting Rhodes, 452 U.S. at 349). Moreover, to show an Eighth Amendment violation, the plaintiff must demonstrate (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials. See Strickler v. Walters, 989 F.2d 1375, 1379 (4th Cir. 1993), cert denied 510 U.S. 949 (1993). Additionally, there

9

must be evidence of a 'serious medical and emotional deterioration to the challenged condition." Id at 1380 (*quoting* Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990)).

Here, the plaintiff does not complain that he was denied adequate, food, shelter or medical care, nor that he was unprotected from harm during the nine hours he was confined to the dry cell. In addition, he does not allege any facts that show that the defendant was aware of any risks of substantial harm, and he also does not allege that the defendant knew that a risk of substantial harm would occur from placing the plaintiff in the 'dry-cell.' Rather, the plaintiff's sole complaint was that he was placed in the cell as punishment for inquiring about the cause of his choking. Therefore, the plaintiff, at best, appears to be making a claim of retaliation.

In order to sustain a claim based on retaliation, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 Fl3d 72, 75 (4th Cir. 1994). Therefore, "in forma pauperis plaintiffs who claim that their constitutional rights have been violated by official retaliation must present more than naked conclusory allegations of reprisal to survive [§ 1915(e)(2)(B)]." Id. Furthermore, claims of retaliation are treated with skepticism in the prison context. Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996). Additionally, a plaintiff alleging that government officials retaliated against him in violation of his constitutional rights must demonstrate, *inter alia*, that he suffered some adversity in response to his exercise of protected rights." American Civil Liberties Union of Maryland, Inc. v. Wicomico County, Md., 990 F.2d 780, 785 (4th Cir. 1993).

Here, the plaintiff does not allege that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that act itself violated such a right. Inn addition, he does not allege any facts that show that the defendant was aware of any risks of substantial harm, and he also

does not allege that the defendant knew that a risk of substantial harm would occur from placing the plaintiff in the 'dry-cell.' Again, the plaintiff sole allegation is that he was placed in the dry cell because he attempted to discover what exactly had caused his choking. Therefore, no constitutional deprivation can be said to be involved, and the plaintiff simply has made a naked conclusory statement. As such, he has failed to present allegations that can survive the initial screening process. Therefore, the plaintiff's claim against Defendant Watson for cruel and unusual punishment, and or retaliation are also due to be dismissed.

### F. Attack by Another Inmate and Placement in the Hole

In Count two of his complaint, the plaintiff alleges that all of the defendants, excluding defendants Monongalia and King, conspired to violate his civil and constitutional rights when they allowed him to be attacked by another inmate, and thereafter, subjected him to cruel and unusual punishment without due process by placing him in the hole and by not punishing the individual who attacked him. The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" Id at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). "For a claim based on failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," and that the prison officials acted with "'deliberate indifference' to inmate health or safety.'" Id. The Supreme Court left open the point at which a risk of inmate assault becomes sufficient for Eighth Amendment purposes. Id. n3. However, the Supreme Court held that "[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of

and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Id. at 837

In his complaint, the plaintiff makes no further allegations. He makes no assertion that the defendants were aware that any inmate posed a threat to the plaintiff, nor does he assert that once the assault occurred, that the defendants failed to respond in an appropriate manner. Among the attachments provided by the plaintiff is an incident report which indicates that on January 30, 2008, Defendant Kern looked down the corridor and saw another inmate and the plaintiff throwing punches at one another to the head and torso area. Defendant Kern called for assistance and gave verbal commands to stop fighting. Neither inmate complied. The other inmate then pulled out a homemade weapon and started stabbing the plaintiff in the head. Defendant Kern gave the other inmate a direct order to drop the weapon and cease his actions. When the inmate failed to comply with the order, the operation lieutenant used chemical agents to get the other inmate to drop the weapon and immediate use of force was used for the safety of the staff and inmates. The plaintiff and the other inmate were medically assessed, decontaminated and placed in the Special Housing Unit ("SHU") without further incident. Accordingly, the undisputed record establishes that the defendants acted appropriately, and the plaintiff's allegation that the defendants "allowed" him to be attacked by another inmate is due to be dismissed.

Additionally, the plaintiff's allegation that his placement in the "hole"[3] subjected him to cruel and unusual punishment without due process also fails to state a claim for relief. Because the plaintiff's claims are directed at federal employees, the Fifth Amendment applies in determining

---

[3]Prisoners often refer to the Special Housing Unit as the "hole."

his due process claim. See Berry v. City of Muskogee, 900 F.2d 1489, 1492 n.2 (19th Cir. 1990 (Fifth Amendment protects against deprivations of life, liberty, or property by federal government). Due process questions are examined in two steps. First, it must be determined whether the government has interfered with a liberty or property interest. Second, if the government has interfered with such an interest, it must be determined whether the procedures which led to the deprivation were constitutionally sufficient. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 459 (1989) (citing Board of Regents of State Colleges v. Roth, 408 U.S. 564, 571 (1972)) (applying 14th Amendment); Hewitt v. Helms, 459 U.S. 460 (1983). In making this inquiry, case law under 42 U.S.C. § 1983 is applicable to Bivens actions. See Butz v. Economou, 438 U.S. 478, 504. The United States Supreme Court has held that prison inmates do not have a liberty interest in a certain prison classification arising from the Due Process Clause, itself. Hewitt, supra at 467. Therefore, under the Due Process Clause, the plaintiff did not have a right to a hearing or other procedural safeguards before he was moved to segregation in the SHU.

Furthermore, to the extent that the plaintiff may be alleging that officials at USP Hazelton violated policy statements and operating procedures in holding him in the SHU, he again fails to state a due process claim. A Bivens action "must be founded upon a violation of constitutional rights," Arcoren v. Peters, 82w9 F.2d 671, 676 (8th Cir. 1987), and "a failure to adhere to administrative regulations does not equate to a constitutional violation." Hovater v. Robinson, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993).

Finally, in Sandin v. Conner, the Supreme Court held that regulatory language does not create a liberty interest unless the language regulates the imposition of "atypical and significant hardship...in relation to the ordinary incidents of prison life." 515 U.S. 472, 485-86 (1995).

13

Although, without question, the conditions in the SHU are more restrictive and austere than those the plaintiff enjoyed in the general population, those conditions are within "the range of confinement to be normally expected for one serving" a federal prison sentence. Id. at 487. The plaintiff has cited nothing which demonstrates a significant hardship during his confinement in the SHU. Therefore, his placement in segregation pending an investigation of the January 30, 2008 incident, did not affect a constitutionally protected liberty interest, and the plaintiff had no right to any level of due process before he was placed there or while he was maintained there.

Finally, as with his confinement in the "dry cell", the plaintiff's confinement in the SHU did not violate the Eighth Amendment's prohibition against cruel and unusual punishment. Again, the plaintiff has made no attempt to demonstrate that he suffered a serious deprivation of a basic human need, let alone demonstrate a deliberate indifference on the part of prison officials. Strickler, supra. Nor, has the plaintiff made any allegation of a serious medical and emotional deterioration attributable to his confinement in the SHU. Id.

### IV. Plaintiff's Pending Motion for Default Judgment

On March 9, 2009, the plaintiff filed a letter which asked that if the "record does not show an answer to my complaint or an enlargement of time to file an answer, I respectfully request that a default judgment be entered against the defendants forthwith." The letter was docketed as Motion for Default Judgment.

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, "[when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend...and that fact is made to appear by affidavit or otherwise, the Clerk shall enter the party's default." However, "[No judgment by default shall be entered against the United States or an officer or agency thereof unless the claimant

establishes a claim or right to relief by evidence satisfactory to the court." Fed.R.Civ.P 55(e). Furthermore, it is axiomatic that service of process must be effective under the Federal Rules of Civil Procedure before a default or a default judgment may be entered against a defendant." Maryland State Firemen's Association v. Chaves, 166 F.R.D. 353 (D. MD 1996).

In this particular case, the plaintiff is proceeding *in forma pauperis*, and therefore, service would be made by the United States Marshall Service, if the plaintiff's complaint survived the screening process. Accordingly, service of process has not been had upon the defendants, and therefore, no answer is due. In addition, even if service had been accomplished, the plaintiff has failed to establish a claim or right to relief.

## V. Recommendation

In consideration of the foregoing, it is the undersigned's recommendation that the plaintiff's Bivens complaint (Doc. 1) be **DISMISSED WITH PREJUDICE** under 28 U.S.C. §§ 1915(e) and 1915A for failure to state a claim. It is further recommended that the plaintiff's Motion for Default Judgment (Doc. 12) be **DENIED**.

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to the *pro se* plaintiff and any counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Dated: June 16, 2009

                                        /s/ James E. Seibert
                                        JAMES E. SEIBERT
                                        UNITED STATES MAGISTRATE JUDGE